UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| HOPE S. T.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:20-cv-01333-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Hope S. T. ("Plaintiff") filed a Complaint on July 1, 2020, seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issue in dispute on May 7, 2021. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# BACKGROUND

On August 12, 2016, Plaintiff protectively applied for DIB, alleging disability beginning August 1, 2016. Administrative Record ("AR") 9, 427, 620-21, 648.[2] On May 6, 2019, after her application was denied (AR 473, 489), Plaintiff, represented by counsel, appeared in Moreno Valley, California, and testified via video before Administrative Law Judge ("ALJ")[3], as did a vocational expert ("VE") telephonically. AR 424-58.

On June 6, 2019, the ALJ issued a written decision finding Plaintiff was not disabled. AR 9-19. The ALJ found Plaintiff last met the insurance status requirements of the Social Security Act ("SSA") on June 30, 2017. AR 11. The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged-onset date of August 1, 2016, through the date she was last insured. AR 11. The ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease; history of cervical fusion; history of right carpal tunnel release procedure; gastroesophageal reflux disease; hyperthyroidism; major depressive disorder; and bipolar disorder. AR 11-12. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (AR 12-13), and she had the RFC to perform light work[4] except (AR 13):

---

[2] The application listed August 1, 2016 as the alleged onset date, but Plaintiff later indicated in disability reports that her disability began April 1, 2014. AR 620, 648, 653, 719, 738. At the administrative hearing, Plaintiff amended her alleged onset date back to August 1, 2016. AR 9, 427-28.

[3] The ALJ's decision indicates the ALJ presided from Dallas, Texas. However, the transcript indicates he was in Albuquerque, New Mexico. AR 9, 424, 426.

[4] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or

[Plaintiff] can frequently climb ramps and stairs, never climb ladders, ropes[,] or scaffolds; [Plaintiff] can occasionally balance, stop, kneel, crouch, and crawl. Reaching overhead bilaterally is limited to occasional. Handling and fingering with the right hand is limited to frequent. [Plaintiff] can perform simple, unskilled work.

The ALJ next found that Plaintiff was unable to perform her past relevant work as an administrative assistant (Dictionary of Occupational Titles ["DOT"] 169.167-010) or purchasing assistant (DOT 162.157-022), as actually or generally performed. AR 1106-07. The ALJ also found that Plaintiff is closely approaching advanced age, has at least a high school education, and can communicate in English. AR 18.

The ALJ then found that, if Plaintiff had the RFC to perform a full range of light work, a Medical-Vocational rule would direct a finding of not disabled. AR 18. But, as Plaintiff's ability to perform the requirements of light work was impeded by additional limitations, the ALJ consulted the testimony of the VE. AR 18. Considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including: assembler of small products (DOT 706.684-022), inspector, light (DOT 559.687-074), and garment sorter (DOT 222.687-014). AR 19. Thus, the ALJ found Plaintiff was not under a "disability," as defined in the SSA, from the amended alleged onset date, through June 30, 2017, the date last insured. AR 19.

---

> carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Aide R. v. Saul, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

3

Plaintiff submitted additional evidence before the Appeals Council in support of her claim of disability and requested review of the ALJ's decision, specifically challenging the ALJ's assessment of her subjective testimony. AR 28, 34-423, 770-72. The Appeals Council found the evidence did not show a reasonable probability that it would change the outcome and denied review, making the ALJ's decision the agency's final decision. AR 27-30.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id. To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B.     The Five-Step Sequential Evaluation**

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. § 404.1520(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See

Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See id. at 1099.

The claimant generally bears the burden at steps one through four to show she is disabled or meets the requirements to proceed to the next step and bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110. However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

### III.
### DISCUSSION

The parties present one disputed issue: did the ALJ properly consider Plaintiff's subjective symptom testimony.[5]

---

[5] Before the ALJ's decision, SSR 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-

## A. Applicable Law

Where a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, the ALJ may discount the claimant's subjective symptom testimony only upon making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885 (citation omitted). But if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Finally, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

## B. Hearing Testimony

The May 2019 hearing is summarized as follows. Plaintiff last worked for four or five months in 2016 as a purchasing assistant for a shipping and receiving company. AR 430-31. She mostly sat at this job and did no lifting. Id.

---

symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, *3 (W.D. Wash. Mar. 4, 2020).

7

Before that Plaintiff worked in 2010 as a management assistant, which she described as "a personal assistant to a family." AR 431. She paid the bills for the family, did their personal work, and answered and made calls on their behalf. AR 431. Her job ended when one of the family members developed Alzheimer's and couldn't work anymore. AR 432. This job also involved primarily sitting and no lifting. AR 432.

From 2010 to 2015, Plaintiff tried to start her own shipping business, but she wasn't successful and reported no income from the business. AR 432-33.

When she stopped working in 2016, her doctor "wrote [her] off" as disabled. AR 433. Through the Employment Development Department, she received unemployment benefits and then state disability benefits after her August 2016 hand surgery. AR 433-35. Plaintiff has had a total of two surgeries on her right hand: an August 2016 carpal tunnel release and then a trigger-thumb surgery about five or six months before the hearing. AR 435.

Plaintiff states she is unable to work because she has trouble moving her neck in all directions; for example, it is very hard for her to look down at a desk or use a telephone. AR 436, 438, 444-46, 450. She experiences pain in her neck, the worst being in the left side and in the base toward the back of her neck. AR 436-37. This pain never goes away, and she experiences migraine headaches all the time because of it. AR 437, 439. Her neck pain radiates down into her shoulders and affects her ability to reach. AR 439, 445. She probably could not change a light bulb due to the pain. AR 445.

About 10 years ago, she had a major operation on her neck. AR 437, 439. Doctors removed a herniated disc, inserted a piece of cadaver bone, and then fused three levels of her neck together with screws and plates. AR 438. Following neck surgery, she experienced a gradual worsening of her condition. AR 440-41. The surgery caused stress above and below the fusion points, and now she has degenerative, bulging discs at those points. AR 441.

Plaintiff also experiences pain throughout her whole spine, from her neck down to her lower back. AR 436. She also has sciatic pain caused by nerve root impingement, which goes down her leg, around her whole thigh, culminating in the top of her foot. AR 436. She has pain in her hand that also never goes away. AR 445. She has trouble holding a mouse and writing due to numbness in her thumb. AR 445-46. Her hand condition has affected her grip, such as her ability to open jars and bottles. AR 446.

She has a neurogenic bladder, which causes frequent use of the restroom. AR 448. This affects her ability to sleep, and she takes medication for it. AR 448. She also has a low thyroid, which is controlled by medication. AR 449. She experiences fatigue due to the medication and needing to go to the restroom during the night. AR 449. One of her medications causes constipation, so she in turn takes medication to treat that. AR 449.

To treat her neck, doctors have been giving her facet nerve block injections. AR 436, 439. Since August 2016, she believes she has had three such injections. AR 436. She has also received injections in her thoracic and lumbar spine. AR 436-37, 442. She has taken part in physical therapy, except for a period when her doctors said she shouldn't because of her neck problems. AR 439. Physical therapy has not helped. AR 439. She also takes pain medication, such as Percocet, Lyrica for nerve pain, and Tizanidine for muscle pain, and Elavil to improve her mood but also to help with pain. AR 439-40, 447. She has also used a TENS[6] unit. AR 443.

---

[6] "TENS" stands for "transcutaneous electric nerve stimulator" (see Int'l Rehabilitative Sci. Inc. v. Sebelius, 688 F.3d 994, 998 (9th Cir. 2012)) and is "used to relieve pain in an injured or diseased part of the body in which electrodes applied to the skin deliver intermittent stimulation to surface nerves, blocking the transmission of pain signals." Alter v. Colvin, 2013 WL 6080179, *5 n.1 (D. Or. Nov. 19, 2013) (internal quotation marks and citation omitted).

Doctors do not recommend further surgery because it would eliminate all motion in her neck. AR 441. Recently, doctors inserted leads into her spine that stimulate her neck. AR 441.

Plaintiff had surgery to her right knee in 1980, and her left knee in 2006. AR 451-52. Her knee pain continues to this day, with her right knee being worse. AR 452. She has trouble stepping. AR 452.

Regarding her mental health, Plaintiff takes "a lot of medication" for depression, anxiety, bipolar disorder, schizoaffective disorder, and paranoia. AR 443-44, 453. These medications affect her memory. AR 443, 447-48. Her condition was "really bad" in 2014, when her mother died, her business was failing, and her husband filed for divorce. AR 443-44. Her mental health issues still exist. AR 444. Plaintiff sees a doctor for therapy, as well as a psychiatrist. AR 447. For her mental condition, she takes Alprazolam for anxiety, Lexapro for depression, Lamotrigine for bipolar disorder, and Elavil. AR 447-48. Plaintiff used to drink alcohol, but she stopped when she was admitted to a psychiatric ward sometime between 2010 and 2014. AR 453. Medical professionals at the ward gave her medicine to help her with her drinking, had she hasn't drunk since. AR 453.

She can lift a bucket of water or two gallons of milk, but it would hurt her back. AR 450-51. She can sit for about an hour before her back hurts. AR 451. She can stand for about 15 minutes before she must sit down due to her knee pain. AR 451-52. She does not need to lay down during the day. AR 452. She doesn't exercise or even walk during the day. AR 452. She does not know how far she can walk because she "tend[s] to not do things." AR 452. If something requires a lot of walking, she will not do it. AR 452. Neck pain is her worst symptom, and the most prohibitive of her ability to work. AR 436, 438, 444-46, 450. She cannot work an eight-hour workday, five days a week due to her condition. AR 452.

C. **Analysis**

The ALJ provided a brief summary of the hearing testimony and then found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements "concerning the intensity, persistence[,] and limiting effects of [the] symptoms" were not entirely consistent with the medical evidence and other evidence in the record. AR 14. The ALJ provided a summary of the medical evidence and found Plaintiff's subjective complaints inconsistent with: (1) mild objective physical examination findings; (2) routine and conservative mental health treatment and "essentially" conservative physical treatment; and (3) Plaintiff's activities of daily living. AR 16-17.

The ALJ's assessment of Plaintiff's testimony is insufficient for the following reasons.

First, the ALJ's reasoning does not identify which specific testimony was allegedly inconsistent with "the medical evidence and other evidence in the record." AR 14; see Brown-Hunter, 806 F.3d at 494 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (citation omitted)). Without more, the ALJ's rejection of Plaintiff's testimony is unreviewable. See Lambert, 980 F.3d at 1277 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting . . . testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (citation and internal quotation marks omitted, emphasis in original). The ALJ's overview of Plaintiff's medical history was

insufficient to discount Plaintiff's subjective complaints because "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Id. at 1278 (citation and internal quotation marks omitted).

Second, the ALJ improperly characterized Plaintiff's physical treatment as "essentially conservative." AR 16. Even giving the ALJ's decision the benefit of the doubt in its failure to consider Plaintiff's two knee surgeries, neck fusion, and second hand surgery as non-conservative because those surgeries fell outside the narrow relevant period,[7] Plaintiff's first hand surgery in August 2016 was not conservative.[8] See Wojtowicz v. Saul, 2021 WL 165086, *7 (E.D. Cal. Jan. 19, 2021) ("[Claimant] had carpal tunnel surgery during the adjudicated period, which is not properly characterized as 'conservative.'"); Jean R. v. Saul, 2020 WL 1505720, *3 (C.D. Cal. Mar. 30, 2020) ("[Claimant] had carpal tunnel release surgery, which is indisputably not conservative.");

---

[7] Medical evidence before or after the relevant period may be relevant in assessing a claim of disability, particularly in a situation such as here where the applicable period was short, Plaintiff's condition progressively worsened, and she received significant, surgical treatment both before and after the applicable period. See e.g., Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition."); DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence . . . predating the onset of disability, when evaluated in combination with later evidence, may help establish disability. This is particularly true when the disabling condition is progressive."); Kimberly S. v. Comm'r of Soc. Sec., 2021 WL 1827680, *2 (W.D. Wash. May 7, 2021) ("A plaintiff's claim does not exist in a vacuum; evidence from before or after the relevant period can inform the ALJ's assessment of the claim."); 42 U.S.C. § 423(d)(5)(B) ("the Commissioner . . . shall consider all evidence available in [an] individual's case record . . .").

[8] Just prior to this surgery, Plaintiff's treating physician explained that Plaintiff was in "acute pain," and that "[s]o far, nothing has worked." AR 1324, 1471-72. Accordingly, the doctor stated he "will proceed with the surgical option" and scheduled Plaintiff's carpal tunnel release to her right wrist. Id.

Sanchez v. Colvin, 2013 WL 1319667, *4 (C.D. Cal. Mar. 29, 2013) ("Surgery is not conservative treatment."). Moreover, after surgery, in 2017 alone, Plaintiff had at least 13 injections, six of them occurring before June 30, 2017, the date she last met the insured status requirements and marking the end of the relevant period. AR 11, 1259, 1263, 1268, 1273, 1277, 1280, 1286, 1289-90, 1293, 1297, 1301, 1305, 1309; See, e.g., Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing doubt that "shots to the neck and lower back qualify as 'conservative' medical treatment"); Contreras v. Berryhill, 2020 WL 619792, at *4 (N.D. Cal. Feb. 10, 2020) (stating "[n]umerous courts have rejected the argument that injections are 'conservative'"; collecting cases). This was not conservative treatment, especially in conjunction with the of strong medication she used during the relevant period for her physical[9] and mental[10] symptoms. See Lapierre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment including narcotic pain medication and cervical fusion surgery deemed not conservative); Christine G. v. Saul, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment.'"; collecting cases).

Third, and finally, the ALJ found that Plaintiff's "reported activities of daily living do not support her allegations of disabling symptoms." AR 17. The ALJ specifically cited Plaintiff's reported ability to prepare meals, do

---

[9] See AR 1280 (listing three medications for physical symptoms by end of relevant period, including Neurontin, Baclofen, and Norco), 1323 (listing at least 10 different medications total just before alleged onset date, including Baclofen, Gabapentin, and Oxycodone).

[10] See AR 1097 (listing five psychotropic medications just before alleged onset date, Wellbutrin, Lamictal, Alprazolam, Buspirone HCL, and Hydroxyzine HCL), 1548 (listing five psychotropic near end of relevant period, Wellbutrin, Lamictal, Alprazolam, Hydroxyzine HCL, and Lexapro).

13

household chores without help or encouragement, shop, and drive. AR 17.

Preliminarily, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016; Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her [testimony] as to her overall disability."). "[O]nly if [the] level of activity [was] inconsistent with [a claimant's] claimed limitations would . . . activities have any bearing on . . . [subjective testimony]." Garrison, 759 F.3d at 1016. A claimant's daily activities may be grounds for discounting testimony "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions . . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Childress v. Colvin, 2015 WL 2380872, *15 (C.D. Cal. May 18, 2015) (ALJ erred in finding claimant's daily activities were inconsistent with the alleged severity of impairments where there was no indication that the activities either comprised a "substantial" portion of claimant's day).

Moreover, the ALJ must when appropriate make findings about the transferability of daily activities to the workplace. See Martinez v. Berryhill, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ improperly "discounted [claimant]'s testimony based on her daily activities . . . [without] support[ing] the conclusions as to the frequency of those activities or their transferability to the workplace."); Orn, 495 F.3d at 630 (ALJ must make "specific findings related to [the daily] activities and their transferability to conclude that a

14

claimant's daily activities warrant" discounting testimony). This is particularly important because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Trevizo, 871 F.3d at 682 (internal quotation marks and citation omitted).

Here, the four, minimal daily activities listed by the ALJ are not inconsistent with Plaintiff's claim that her impairments preclude her from performing a full-time job in the rigors of a workplace setting. As the Commissioner concedes, "Plaintiff's activities were not particularly extensive . . .." Jt. Stip. at 23. And there is no evidence these activities comprised a "substantial" portion of her day. See Orn, 495 F.3d at 639; Childress, 2015 WL 2380872 at *15.

Furthermore, the ALJ failed to make adequate findings about the transferability of Plaintiff's activities to the workplace. The ALJ's conclusory statement that Plaintiff "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations" (AR 17), does not identify which activities translate into what workplace activities. The ALJ did not explain the frequency of any of the activities cited or relate how they translated to the workplace environment. See Brown-Hunter, 806 F.3d at 492 (federal courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review"); Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."). As such, reliance upon this factor here does not constitute a specific, clear, and convincing reason supported by substantial evidence for discredit Plaintiff's symptom testimony. Martinez, 721 F. App'x at 600; Trevizo, 871 F.3d at 682; Orn, 495 F.3d at 630; Dickinson v. Saul,

15

2019 WL 3837652, *9 (D. Idaho Aug. 13, 2019) (ALJ's conclusion that claimant could perform light work because she could handle a checkbook, cook, walk for exercise twice a week, and care for herself, insufficient because ALJ did not explain how the activities, "which are not performed on a sustained basis," involved the same tasks required in a work setting); Swanson v. Colvin, 2017 WL 8897144, *21 (D. Ariz. Feb. 7, 2017) (claimant's daily activities of "simple meal preparation, light housekeeping, driving short distances, and caring for her children are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace" (internal quotation marks omitted)).

The Commissioner posits a fourth reason in support of the ALJ's decision: the ALJ's summary of the medical opinion evidence. Jt. Stip. at 16, 24-25. However, nowhere in the decision does the ALJ state that this is a reason for discounting Plaintiff's testimony or explain which of her statements is inconsistent with which aspect of what opinion. AR 17; See Garrison, 759 F.3d at 1010 (district court's review is limited to only grounds relied upon by ALJ); Orn, 495 F.3d at 630 (the court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." (citation omitted)). The ALJ was required to discuss each medical opinion and state the weight he gave it. See 20 C.F.R. § 404.1527(c). "If doing so constituted a clear and convincing reason for discounting claimants' subjective symptom testimony, then the rule articulated in Berry, Ghanim, and other case law would be rendered meaningless." Cassandra E. L. v. Saul, 2020 WL 2556348, *6 (C.D. Cal. May 20, 2020).

The only other rationale offered by the ALJ was the inconsistency between the mild objective findings and Plaintiff's testimony. This, alone, is not a sufficient basis to support the determination. See Rollins, 261 F.3d at 856-57; Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective

16

medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Dschaak v. Astrue, 2011 WL 4498835, *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's credibility determination could not rely solely on conflicts with the medical evidence.").

Thus, assuming without deciding that the ALJ properly discounted the symptom testimony based on inconsistency with the objective medical evidence, as such ground cannot be the sole basis to do so, the ALJ erred. Here, the undersigned cannot conclude the ALJ's error was harmless. See, e.g., Brown-Hunter, 806 F.3d at 492-93 (ALJ's failure adequately to specify reasons for discrediting claimant testimony "will usually not be harmless"). In light of the significant functional limitations reflected in Plaintiff's subjective statements, the undersigned cannot "confidently conclude that no reasonable ALJ, when fully crediting the claimant's testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**D.      Remand is appropriate.**

The Court has discretion to remand the matter for further proceedings. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). When further proceedings would serve no useful purpose or when the record has been fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for further proceedings is appropriate where issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes remand for further proceedings is warranted.

On this record it is not entirely clear whether Plaintiff was actually disabled during the narrow relevant period. See Bunnell, 336 F.3d at 1115-16. Notably, all four State agency doctors concluded Plaintiff could work, a point which Plaintiff does not dispute. AR 17, 463-70, 479-86. Moreover, Plaintiff appears to have testified that she continued to look for work and received unemployment benefits even after she alleged she was unable to work, although she was not sure of the precise dates. See AR 429-30; Merritt v. Colvin, 572 F. App'x 468, 470 (9th Cir. 2014) (ALJ properly reasoned that claimant's "'interest in starting a new job is not consistent with [the] marked limitations in the ability to tolerate work pressures' about which [claimant] testified"); Lenhart v. Astrue, 252 F. App'x 787, 789 (9th Cir. 2007) (ALJ reasonably determined claimant exaggerated symptoms in part because he applied for a job and collected unemployment benefits); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ properly discredited claimant's testimony in part because he held himself out as available for work). Further, although not fully explored during the hearing, Plaintiff also testified she stopped working her last job in 2016 because the position was temporary and the work was no longer available, not because she was disabled. AR 432-33; See, e.g., Brackett v. Comm'r Soc. Sec. Admin., 468 F. App'x 754, 755 (9th Cir. 2012) (ALJ properly rejected subjective limitations in part because claimant stopped working when he was laid off and said that was the reason he stopped working).

Because it is unclear whether Plaintiff was in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell, 336 F.3d at 1115-16; Garrison, 759 F.3d at 1021 (noting that credit-as-true rule should not be applied where an "evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled"); Cassandra E. L., 2020 WL 2556348 at *7 (remanding, even where claimant challenged only the ALJ's

18

assessment of her testimony, because the Court still had doubts about claimant's disability in light of other evidence in record, including other aspects of her testimony, third-party testimony, and conflicting evidence in the record). The parties may freely take up the issue raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ should reassess Plaintiff's subjective testimony, conducting a new hearing if necessary, then reassess Plaintiff's RFC if warranted, and proceed through the remaining steps of the disability analysis to determine whether Plaintiff is under a "disability" as defined in the SSA.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: June 21, 2021

_____
JOHN D. EARLY
United States Magistrate Judge